IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IRENA WOJCIK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-17-3198 |
| | § | |
| MEMORIAL HERMANN | § | |
| HEALTH SYSTEM, | § | |
| | § | |
| Defendant. | § | |

## Memorandum Opinion and Order

Pending before the court is defendant Memorial Hermann Health System's ("Memorial Hermann") motion for summary judgment (Dkt. 36), plaintiff Irena Wojcik's response (Dkt. 41), and Memorial Hermann's reply (Dkt. 44).[1] Having considering the pleadings, the evidentiary record, and the applicable law, the court finds that Memorial Hermann's motion for summary judgment should be **GRANTED**.

### I. BACKGROUND

This is an age discrimination and retaliation case brought pursuant to the federal Age Discrimination in Employment Act of 1967 ("ADEA"), and chapter 21 of the Texas Labor Code

---

[1] Also pending is Wojcik's opposed motion to supplement her response (Dkt. 47), which the court construes as a motion for leave to file a surreply, and Memorial Hermann's response in opposition (Dkt. 49). "The Court finds that the Defendant did not raise new legal theories or attempt to present new evidence in the Reply that would necessitate a surreply by Plaintiff." *Smith v. Fluor Enters., Inc.*, No. 4:10-CV-03625, 2013 WL 571787, at *4 (S.D. Tex. Feb. 12, 2013) (Ellison, J.). Nor does the "additional documentary evidence" that Wojcik seeks to add (Dkt. 47 ¶ 4) constitute "exceptional or extraordinary circumstances." *Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011). The "new evidence" that Wojcik "located" was created by her and her counsel more than a year before the instant motion was filed. Dkt. 47-2. Accordingly, Wojcik's motion (Dkt. 47) is denied.

("chapter 21"), popularly known as the Texas Commission on Human Rights Act ("TCHRA").[2] Wojcik was employed by Memorial Hermann as a physical therapy assistant from December 2009 until June 2017, when her position was eliminated as part of a reduction-in-force ("RIF"). Dkt. 36 at 4; Dkt. 41 ¶¶ 1, 5. Wojcik claims that this RIF was merely pretext and that she was actually terminated as the result of age discrimination and retaliation for opposing that age discrimination.

From December 2009 to June 2015, Wojcik worked at Memorial Hermann's Beechnut Clinic. Dkt. 36 at 4; Dkt. 41 ¶ 2. In July 2015, Wojcik transferred to the Bellaire Clinic, where the alleged age discrimination occurred. Dkt. 36 at 4; Dkt. 41 ¶ 2. At the Bellaire Clinic, Wojcik worked under the supervision of Tamara "Nikki" Shelton, the Clinic Manager. Dkt. 36 at 9; Dkt. 41 ¶ 2. Shelton reported to Tim Couture, her Regional Director. Dkt. 36 at 4. Supervising the Bellaire Clinic was Shelton's first management job and Wojcik was her oldest employee. Dkt. 41 ¶ 3. During this time, Wojcik claims that she was "subjected to repeated acts of age discrimination" by Shelton. *Id.* For example, Wojcik claims that Shelton "would state that the 'dynamic of the clinic needs young people'" and "promoted youthful teambuilding events like a Christmas party featuring an American Ninja Warrior event." *Id.* Shelton once referred to Wojcik as a "grandma" when asking Wojcik to watch Shelton's son. Dkt. 41-7 at 727. And Shelton once told a patient of Wojcik's to get her green tea "because it's good for older people."[3] Dkt. 41-6 at 718. Wojcik claims these events made her feel

---

[2] The TCHRA nomenclature is disfavored by the Texas Supreme Court. *See Johnson v. Select Energy Servs., L.L.C.*, No. CIV.A. H-11-3486, 2013 WL 5425115, at *1 n.1 (S.D. Tex. Sept. 24, 2013) (Harmon, J.). However, because "many courts still do" use chapter 21 and TCHRA interchangeably, this court will do so also to avoid confusion when discussing case law. *Id.*

[3] Wojcik's brief quotes Shelton as saying "that 'old people like green tea.'" Dkt. 41 ¶ 3. However, the court notes that these exact words do not appear in the portion of the transcript that Wojcik cites for this "quote." Dkt. 41-6 at 718. The court has quoted the relevant portion above as it appears in the transcript.

like "an outcast," and in May 2017, Wojcik claims to have brought her concerns to Shelton's attention. *Id.*

In Summer 2017, Tim Couture was informed that he needed to reduce the number of employees as part of a RIF. Dkt. 36 at 6; *see also* Dkt. 41 ¶ 4. Wojcik's position was one of the eight that he eliminated. Dkt. 36 at 7. Couture initially considered transferring Wojcik to another location—the Town & Country Clinic. Dkt. 36 at 7–8; *see also* Dkt. 41 ¶ 4. However, Couture ultimately decided against transferring Wojcik after discussing it with Greg Dodson, the Town & Country Clinic Manager, and concluding that it would be better to hire another physical therapist instead of another PTA in order to meet the clinic's requirements to see new patients within 48 hours. Dkt. 36 at 8. On June 26, 2017, Wojcik was formally notified that her position would be terminated effective July 7, 2017. Dkt. 36 at 8–9. On July 5, 2017, Wojcik submitted a complaint to Memorial Hermann's Compliance Helpline, "indicating that she believed Dr. Shelton was terminating her employment because of her age." Dkt. 36 at 9; *see also* Dkt. 41 ¶ 6. This lawsuit follows.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "If [the movant's] burden is carried, then the nonmoving party must establish the existence of evidence creating an issue of fact that can be properly characterized as outcome-determinative." *Hanchey v. Energas Co.*, 925

F.2d 96, 97 (5th Cir. 1990) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986)). Evidence is viewed in the non-movant's favor. *Jackson*, 602 F.3d at 377 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)). However, "[l]egal conclusions and general allegations do not satisfy this burden." *Hanchey*, 925 F.2d at 97 (citing *Fontenot*, 780 F.2d at 1195–96).

## III. ANALYSIS

### A. Chapter 21

Memorial Hermann argues that this court lacks jurisdiction to hear Wojcik's chapter 21 claims because she failed to wait 180 days before filing suit. Dkt. 36 at 10–12. Memorial Hermann grounds its arguments in *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483 (Tex. 1991), *overruled by In re USAA*, 307 S.W.3d 299 (Tex. 2010). Wojcik counters that (1) chapter 21's exhaustion requirement is not jurisdictional, and (2) because the ADEA only requires a plaintiff to wait 60 days before filing suit—which Wojick did—and because chapter 21 is meant to "correlate state law with federal law," this court has jurisdiction to hear Wojcik's claims. Dkt. 41 at 9–10 (quoting *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000)). Both sides' arguments miss the mark.

Wojcik is correct that the requirement is not jurisdictional, although she identifies inapposite law in support of her argument. The relevant law is the Fifth Circuit's opinion in *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165 (5th Cir. 2014). In *Gorman*—and against the backdrop of the the Texas Supreme Court's opinion in *USAA*—the Fifth Circuit confronted the question of whether it had jurisdiction to hear plaintiff's chapter 21 claims where plaintiff failed to exhaust her administrative remedies through either receipt of a right to sue letter, or waiting 180 days without

4

resolution by the Texas Workforce Commission ("TWC"). *Gorman*, 753 F.3d at 169. The court found that:

> Although not explicit, *USAA* also overturned *Schroeder*'s holding that the TCHRA right to sue letter requirement is jurisdictional. Two reasons lead us to this conclusion. First, the TCHRA's exhaustion of remedies requirement is not expressly required by the statute but is inferred by the courts from the statute's structure. *See Schroeder*, 813 S.W.2d at 487. Consequently, the "clear legislative intent" that *USAA* held was necessary to render a provision jurisdictional is lacking. *USAA*, 307 S.W.3d at 306. If the TCHRA's exhaustion of remedies requirement is not jurisdictional, neither is the right to sue requirement, which is part of the exhaustion requirement.

*Id.* at 169–70. Following *Gorman*'s logic, if the right to sue requirement is not jurisdictional, neither is the requirement to wait 180 days, which is also part of the exhaustion requirement. Accordingly, the court has jurisdiction to hear Wojcik's chapter 21 claims.

However, exhaustion is still a prerequisite to filing suit. *See e.g.*, *Gorman*, 753 F.3d at 170 ("'the receipt of a right-to-sue letter is a condition precedent'") (quoting *Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982)). Wojcik tries to get around this requirement by noting that she was only required to wait 60 days to file suit under the ADEA, and that chapter 21 is "'intended to correlate with federal law.'" Dkt. 41 at 10 (quoting *MD Anderson*, 28 S.W.3d at 24). But the ADEA is not the federal law with which chapter 21 was intended to correlate. "*USAA* emphasized the importance of harmonizing the interpretations of the TCHRA *and Title VII*." *Gorman*, 753 F.3d at 170 (emphasis added). Under Title VII, administrative exhaustion requires waiting 180 days. *See Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018) (noting that exhaustion is "a precondition to filing suit" and affirming dismissal of plaintiff's Title VII claim where he waited only 178 days, "two days shy of the statutorily-mandated 180 days"). Accordingly, administrative exhaustion under chapter 21 also requires waiting 180 days, which Wojcik

5

indisputably did not do.[4]

Memorial Hermann has invoked failure to exhaust administrative remedies as an affirmative defense, and Wojcik "does not offer a waiver or estoppel argument to excuse [her] failure to exhaust." *Stroy*, 896 F.3d at 698. Accordingly, Memorial Herrmman is entitled to summary judgment on Wojcik's chapter 21 claims.[5]

**B. Discrimination Claim**

The parties agree upon an incorrect standard for prima facie age discrimination in a reduction-in-force case. *See* Dkt. 36 at 12; Dkt. 41 ¶ 13. The correct standard is as follows:

> In a reduction-in-force case, a party makes out a prima facie case of age discrimination by showing "(1) that he is within the protected age group; (2) that he has been adversely affected by the employer's decision; (3) that he was qualified to assume another position at the time of the discharge; and (4) 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'"

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 n.4 (5th Cir. 2019) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)). There is no dispute that Wojcik was within the protected age group, that she was adversely affected by the elimination of her position, and that she was qualified to assume another position had one been available. Dkt. 36 at 18. Because Memorial Hermann fails to discuss the fourth prong of the correct standard, and because "'a plaintiff need only make a very minimal showing,'" the court will "assume *arguendo* that [Wojcik] has established a *prima facie* case." *Nichols*, 81 F.3d at 41 (quoting *Thornbrough v.*

---

[4] Wojcik does not dispute that she filed this suit 83 days after filing her dual-filing her charge with the EEOC and TWC. Dkt. 36 at 11.

[5] *See Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010) (noting that the Fifth Circuit has "frequently approved of using summary judgment to address exhaustion and other affirmative defenses not enumerated in Rule 12(b)").

*Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

Although a "*prima facie* case raises an inference of unlawful discrimination," that inference disappears where the employer articulates "a legitimate, non-discriminatory reason for the layoff, *i.e.*, the reduction in force." *Id.* (citing *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir. 1996) (en banc)). Here, Memorial Hermann has articulated such a reason. Dkt. 36 at 16. Thus, it falls to Wojcik "to demonstrate that the defendant's articulated rationale is merely a pretext for discrimination." *Nichols*, 81 F.3d at 41.

"Under the ADEA, the employee must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, L. Ed. 2d 105 (2000)). Pretext is established "'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Id.* (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)). As evidence of pretext, Wojcik points to comments made by Shelton. Dkt. 41 at 14. However, Shelton was not the person responsible for selecting Wojcik for the RIF—that person was Couture—and Wojcik points to no evidence to suggest otherwise. Wojcik also does not point to any evidence of animus on Couture's part. Instead, Wojcik claims that a "cat's paw" analysis should be applied because Couture was influenced by Shelton's discriminatory animus. Dkt. 41 ¶ 5 n.4; 14.

"To invoke the cat's paw analysis, [Wojcik] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decisionmaker.'" *Roberson v. Alltel Info.*

7

*Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)). The court assumes, *arguendo*, that Shelton's statements constitute discriminatory animus. Even so, Wojcik's claim still fails because Wojcik cannot show that Shelton possessed leverage or exerted influence over Couture. In support of her cat's paw theory, Wojcik cites to a February 2016 email that Shelton[6] forwarded to Couture. Dkt. 41-3 at 508. The original email was from a Patient Access Rep who wrote that a certain patient[7] "wants to stay with you [Shelton], she felt uncomfortable with Irena [Wojcik]." *Id.* Shelton forwarded this email to Couture stating: "See below! This is a perfect patient for a PTA but we can't utilize her." *Id.* Wojcik also cites to a portion of Couture's deposition (Dkt. 41-3 at 428–29) and an October 2016 email (Dkt. 41-4 at 509), which show that Couture forwarded an announcement about a PTA opening at the Beechnut Clinic to Shelton, asking if Irena would want to be transferred there. Couture claims he forwarded this email because he "knew that Nikki [Shelton] was having difficulty with Irena [Wojcik]." Dkt. 41-2 at 428–29. These are the only portions of the record that Wojcik cites in support of her cat's paw theory, and they do not establish leverage or influence.

Even if Shelton was motivated by discriminatory animus in forwarding the October 2016 email to Couture, the email itself originated not from Shelton, but from a neutral third party concerning a patient's own statement. More importantly, the email predates Couture's selection of Wojcik for the RIF by at least five months.[8] Most importantly, Wojcik offers no evidence to

---

[6] The document reflects Shelton's maiden name: Hawkins. *See* Dkt. 36 at 4 n.4.

[7] The patient's name is redacted.

[8] Couture became aware of the RIF in April 2017. Dkt. 36 at 6. It is not clear from the parties' briefs when precisely between April 2017, when Couture was informed of the head count reduction, and July 2017, when Wojcik's termination became effective, that Couture selected

contradict Shelton and Couture's testimony that Shelton had no role in selecting Wojcik for the RIF. *See* Dkt. 41-3 at 183 (Shelton disclaiming involvement in the RIF decision); *id.* at 444 (Couture testifying that his RIF decision was based on "operational performance of the facility," "KPI metrics, [Wojcik's] performance," and "whether or not for any – for any employee that we look at, if we pulled her out of the facility, could the other clinicians pick up the volume and not disrupt patient care"). Imputing discriminatory animus from Shelton to Couture requires Wojcik to show that Couture "'acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (quoting *Russell*, 235 F.3d at 227). Wojcik has not carried this burden. Accordingly, Wojcik's cat's paw theory fails.[9]

Wojcik also questions the veracity of whether her position was actually eliminated (Dkt. 41 at 11), which if true, might indicate pretext for Wojcik's termination. As evidence that Wojcik's position was not actually eliminated, Wojcik points to the fact that Shelton emailed Couture three days after Wojcik's termination stating that the clinic was "slammed" and that Shelton had "asked [her] therapists to stretch themselves to get patients in since Irena's departure." Dkt. 41-3 at 492–93. Wojcik also points out that Shelton requested Zach, "a younger PTA to transfer to Wojcik's former work location." Dkt. 41 ¶ 14. The record does not establish that this PTA was in fact younger than Wojcik, but the court will assume, *arguendo*, that he was. Had Zach actually transferred to Shelton's

---

Wojick for the RIF. Accordingly, the time period between this email from Shelton and Wojcik's selection for the RIF could have been longer than five months, but is at least that much.

[9] Wojcik claims that "both Shelton and Couture intentionally deleted work-related communications from their mobile devices." Dkt. 41 ¶ 5 n.4. Whether this is true is not an issue before the court. Moreover, Wojcik has not suggested that the court need to resolve this issue in order to decide the instant motion. *See id.* ("Even without this evidence, Wojcik proves a "Cat's Paw" theory, shown below.").

9

clinic and assumed Wojcik's duties, the court might consider the RIF a pretext for Wojcik's termination. However, Wojcik concedes that "Zach ultimately did not transfer." *Id.* Wojcik also argues that her position was not really eliminated because her duties were "absorbed by existing younger[10] employees." *Id.* But Couture explicitly based his decision to eliminate Wojcik's position in part on the expectation that the other employees would absorb Wojcik's workload. Dkt. 41-3 at 444. That the clinic struggled in the wake of Wojcik's departure is at best evidence that Couture miscalculated the clinic's ability to absorb the work—it is not evidence that the entire RIF was a farce. In sum, Shelton's complaints about her clinic's workload following Wojcik's departure are insufficient to establish that Memorial Hermann's proffered explanation for terminating Wojcik, *i.e.*, the reduction-in-force, "is false or unworthy of credence." *Squyres*, 782 F.3d at 231.

**C. Retaliation Claim**

To establish a prima facie case of retaliation under the ADEA, Wojcik must show "(1) that [s]he engaged in [an] activity protected by the ADEA; (2) that there was an adverse employment action; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1225–26 (5th Cir. 1996) (quoting *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992)). Memorial Hermann alleges that Wojcik fails to satisfy the first and third prongs of this test. Dkt. 36 at 19.

As to the first prong, Wojcik asserts that she engaged in a protected activity on two occasions. The first was "in a May 2017 meeting with Shelton," and the second was "when she reported her concerns to Defendant's compliance office." Dkt. 41 ¶ 20(a); *see also* Dkt. 41 ¶¶ 3, 6.

---

[10] Because Wojcik was the oldest employee (Dkt. 41 ¶ 3), any employee who absorbed her duties would necessarily be younger.

10

"With regard to the first element, a plaintiff has engaged in protected activity if [s]he has 'opposed any practice' forbidden by the ADEA." *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 869 (5th Cir. 2016) (quoting 29 U.S.C. § 623(d)). As to the May 2017 meeting, Wojcik points the court only to pages 757 and 767 of Appendix A to her response to substantiate that she engaged in a protected activity. Dkt. 41 ¶ 3. The first page merely shows Wojcik testifying to notes from the May 2017 meeting that state "I have talked with the doctor." Dkt. 41-7 at 757. Nowhere does it reflect what she talked to Shelton about. The second page that Wojcik points to reflects that she told Shelton she felt "isolated" and that it was "all conversation about all the situation is going on in the clinic," but admits that she "didn't say by age. I didn't use the word, no." Dkt. 41-8 at 767. "[A] vague complaint that does not reference a discriminatory practice does not constitute a protected activity." *Fuentes v. City of San Antonio Fire Dep't*, 240 F. Supp. 3d 634, 645 (W.D. Tex. 2017) (citing *Carter v. Target Corp.*, 541 Fed. App'x. 413, 418 (5th Cir. 2013)). Wojcik points this court to no evidence that would suggest her May 2017 meeting with Shelton constituted a protected activity.[11] Accordingly, the court finds that Wojcik's May 2017 meeting with Shelton was not a protected activity.

As for the second occasion, "Memorial Hermann does not contest that Wojcik engaged in 'protected activity' when she lodged her complaint through Memorial Hermann's Compliance Helpline on July 5, 2017, contending that she was being terminated because of her age." Dkt. 36 at 20. However, Memorial Hermann asserts that "this complaint cannot support her retaliation claim

---

[11] "'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)).

because it came after [Wojcik] was selected for the reduction-in-force." *Id.* Wojcik admits that this protected activity *followed* receipt of "word that her employment was being terminated." Dkt. 41 ¶ 6. An adverse action contemplated by an employer before learning of the protected activity "is no evidence whatever of causality." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam). Accordingly, with regard to Wojcik's July 5, 2017 complaint, her retaliation claim fails for lack of causality.

Wojcik appears to also claim retaliation because she "was intentionally not hired into alternate positions within MHHS even though it is their policy to place qualified employees who are affected by a reduction in force." Dkt. 41 ¶ 20(b). Memorial Hermann offers myriad reasons as to why such a claim fails, including a failure to administratively exhaust and that such a claim is not recognized in the Fifth Circuit. Dkt. 36 at 14 n. 8; Dkt. 44 at 9. The court need not address these arguments because any claims that Wojcik could make would clearly fail for other reasons.

If Wojcik is claiming retaliation for the failure to transfer her to the Town and Country clinic, that claim would fail for the same reasons that her termination claim fails: because the decision to not transfer her was made "on or about June 13, 2017" (Dkt. 36 at 8), nearly a month before Wojcik's only protected activity. If Wojcik is claiming retaliation for Memorial Hermann's failure to hire her into some other positions, she fails to identify those positions, state when she applied for them, identify who was responsible for hiring her into them, or provide any relevant details. Assuming such a claim could be made and that Wojcik had administratively exhausted that claim, with such deficient pleading, Wojcik would fail to state a claim, much less survive summary judgment. Accordingly, all of Wojcik's potential retaliation claims fail.

## IV. CONCLUSION

For the reasons stated above, Memorial Hermann's motion for summary judgment is **GRANTED**.

Signed in Houston, Texas on October 3, 2019.

_____
Gray H. Miller
Senior United States District Judge